UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SUTTER HEALTH, a California Nonprofit Public Benefit Corporation, et al., | |
| | NO. 2:05-CV-1081 MCE-PAN |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| UNITE HERE, an Unincorporated Association, and DOES 1 through 100, | |
| Defendants. | |

----oo0oo----

The present action concerns an allegedly defamatory postcard written and distributed by Defendant UNITE HERE ("UNITE"), an unincorporated labor union operating in the State of California. Plaintiffs, Sutter Health and Sutter hospitals (collectively "Sutter"), sued UNITE in Placer County Superior Court for damages and injunctive relief. UNITE removed to this Court based on federal question jurisdiction. Sutter now moves to remand this action back to the Placer County Superior Court on the grounds

1

that this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. section 1447(c). Sutter further seeks an award of costs and attorney fees.

For the reasons set forth below, Sutter's motion to remand is GRANTED.[1] However, Sutter's request for costs and attorney fees is DENIED.

## BACKGROUND

Sutter operates several hospitals throughout Northern California. Most or all of its facilities have contracted with Angelica Textile Services, Inc. ("Angelica")[2] to receive linen services. In April 2005, Sutter renewed all but one of its linen service contracts with Angelica.

UNITE represents employees at the Angelica and Golden State facilities in Antioch, Turlock, and Sacramento, California. Recently, UNITE and Angelica became embroiled in a labor dispute for reasons not material to this action. On February 18, 2005, UNITE sent a letter to Sutter, allegedly requesting a meeting with Sutter representatives to discuss UNITE's dispute with Angelica. Sutter declined UNITE's request.

Soon thereafter, UNITE mailed an allegedly defamatory postcard to "past, present, and prospective" Sutter patients

---

[1] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument. E.D. Local Rule 78-230(h).

[2] Some of the Sutter facilities contract with a company called Golden State Services, Inc. However, Golden State is entirely owned and operated by Angelica.

2

1   throughout Northern California.  The following are among the
2   allegedly defamatory statements within the postcard:
3   > "You may be bringing home more than your baby if you
        deliver at a Sutter birthing center. . . .  Reports
4   > have surfaced that Angelica, the laundry service
        utilized by Sutter, does not ensure that 'clean' linens
5   > are free of blood, feces, and harmful pathogens. . . .
        *Protect your newborn.*  Choose your birthing center
6   > wisely. . . ."
7   Pls' Compl., ¶ 17 (emphasis in original).  UNITE admits that it
8   distributed the postcard.  Defs' Answer, ¶ 18.  On April 28,
9   2005, Sutter filed suit against UNITE alleging four state-law
10  claims: (1) libel, (2) trade libel, (3) intentional interference
11  with prospective business economic relations ("business
12  interference"), and (4) unfair business practices ("UCL").  UNITE
13  seeks to have these claims adjudicated in this federal forum,
14  while Sutter seeks to have this action remanded to state court
15  where it originally brought suit.

**STANDARD**

19     A defendant may remove any civil action from state court to
20  federal district court if the district court has original
21  jurisdiction over the matter.  28 U.S.C. § 1441(a).  Generally,
22  district courts have original jurisdiction over civil actions in
23  two instances: (1) where there is complete diversity between the
24  parties, or (2) where a federal question is presented in an
25  action arising under the Constitution, federal law, or treaty.
26  28 U.S.C. §§ 1331 and 1332.
27     The removing party bears the burden of establishing federal
28  jurisdiction.  Ethridge v. Harbor House Rest., 861 F.2d 1389,

3

1393 (9th Cir. 1988). Furthermore, courts construe the removal statute strictly against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). If there is any doubt as to the right of removal in the first instance, remand must be granted. See Gaus, 980 F.2d at 566. Therefore, if it appears before final judgment that a district court lacks subject matter jurisdiction, the case shall be remanded to state court. 28 U.S.C. § 1447(c).

The district court determines whether removal is proper by first determining whether a federal question exists on the face of the plaintiff's well-pleaded complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). If a complaint alleges only state-law claims and lacks a federal question on its face, then the federal court must grant the motion to remand. See 28 U.S.C. § 1447(c); Caterpillar, 482 U.S. at 392. Nonetheless, there are rare exceptions when a well-pleaded state-law cause of action will be deemed to arise under federal law and support removal. They are " . . . (1) where federal law completely preempts state law, (2) where the claim is necessarily federal in character, or (3) where the right to relief depends on the resolution of a substantial, disputed federal question."[3]  ARCO Envtl.

//

---

[3] While UNITE does not contend that Sutter's claims are necessarily federal in character, the Court acknowledges its obligation to raise the issue sua sponte to determine whether jurisdictional requirements are met. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004). The Court has analyzed this exception to the well-pleaded complaint rule and has concluded that Sutter's claims are not federal in character. Accordingly, this exception is inapplicable here.

4

Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont., 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney fees accrued in response to the defendant's removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

**ANALYSIS**

UNITE removed to this Court pursuant to 28 U.S.C. sections 1441 and 1446. UNITE advances two alternative theories upon which, it argues, federal question jurisdiction exists. First, UNITE contends that Sutter's business interference and UCL claims, while seemingly state-law claims, are completely preempted by federal labor law. According to UNITE, their postcard campaign constituted a "secondary boycott" against Sutter and is governed exclusively by 29 U.S.C. sections 187 ("303") and 158(b)(4) ("8(b)(4)") of the federal Labor Management

//
//
//
//
//
//
//

5

Relations Act of 1947 ("LMRA").[4]  Alternatively, UNITE argues that Sutter's business interference and UCL claims arise under federal law because they necessarily raise a disputed, substantial federal issue.[5]

United States Supreme Court and Ninth Circuit precedent indicate that Sutter's state-law claims do not create a federal question because they do not arise under federal law.  See <u>Linn v. United Plant Guard Workers, Local 114</u>, 383 U.S. 53, 60 (1966); <u>Wayne v. DHL Worldwide Express</u>, 294 F.3d 1179, 1183-84 (9th Cir. 2002).  While the quarrel between UNITE and Sutter may technically be called a labor dispute, that characterization alone does not automatically invoke federal labor law.  At most, sections 8(b)(4) and 303 of the LMRA may provide UNITE with a defense against Sutter's allegations.  However, a suit may not be removed to federal court based solely on a federal defense.  <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 393 (1987).  As delineated below, UNITE's failure to establish federal jurisdiction mandates that Sutter's motion to remand be granted.
//

---

[4] Section 8(b)(4) provides, in part: "It shall be an unfair labor practice for a labor organization . . . to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . forcing or requiring any person to . . . cease doing business with any other person."  29 U.S.C. § 158(b)(4)(B).  Section 303 provides, in part: "Whoever shall be injured in his business or property by reason or [sic] any violation of [section 8(b)(4)] . . . may sue therefor in any district court of the United States . . . or in any other court having jurisdiction of the parties."  28 U.S.C. § 187(b).

[5] UNITE admits that Sutter's libel claims do not create a federal question; however, they argue that this Court has supplemental jurisdiction over these claims, pursuant to 28 U.S.C. § 1367.

6

**1.   Well-Pleaded Complaint Rule**

UNITE contends that Sutter's business interference and UCL claims are completely preempted as secondary boycott activity governed by the LMRA. Sutter rebuts that it has not raised any claims subject to the LMRA. Rather, Sutter urges that it is entitled to rely on the well-pleaded complaint rule and have its wholly state-law claims adjudicated in state court. Sutter further argues that while section 185(a) ("301(a)") of the LMRA does completely preempt, section 303 does not. This Court agrees.

For nearly a century, the well-pleaded complaint rule has governed removal actions. See Aetna Health, Inc. v. Davila, 542 U.S. 200, 124 S.Ct. 2488, 2494 (2004); Franchise Tax Board of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-10 (1983); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). The rule states that if a federal question is not presented on the face of the plaintiff's complaint, then the action cannot be removed to federal court. Franchise Tax Board, 463 U.S. at 10-11.

Unlike state courts, federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Thus, the well-pleaded complaint rule operates to avoid upending federalism and creating serious jurisdictional conflicts between federal and state courts. Franchise Tax Board, 463 U.S. at 9-10.

In the present action, Sutter likely could have raised a federal question by alleging a section 303 unfair labor practice

7

claim. See San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters, 125 F.3d 1230, 1234-35 (9th Cir. 1997) (in federal court, plaintiff alleged federal section 303 claim for illegal secondary boycott with state law-claims of libel and business interference). Nonetheless, Sutter chose not to avail itself of that remedy. Instead, it chose to seek redress in a state forum as it is legally permitted to do.

The well-pleaded complaint rule "makes the plaintiff the master of the claim." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Thus, Sutter successfully avoided raising a federal question by relying exclusively on California state law. See Id. Absent an exception to this rule, the Court must remand this action as no federal question is presented on the face of Sutter's complaint.

**2.   Exceptions to the Well-Pleaded Complaint Rule**

   **a. Complete Preemption**

UNITE contends that sections 8(b)(4) and 303 of the LMRA completely preempt any state-law actions concerning secondary labor activity. According to UNITE, Congress intended federal labor law to provide the exclusive remedy for parties injured by secondary labor activity. Because its postcard campaign against Sutter is a secondary boycott, UNITE reasons, Sutter's business interference and UCL claims are completely preempted and must be heard in this federal forum. We disagree.

As explained above, the Supreme Court has recognized the complete preemption doctrine as an exception to the well-pleaded

8

complaint rule.  Pursuant to this doctrine, a wholly state-law claim can still present a federal question where Congress has intended for a particular federal statute to provide the exclusive cause of action, procedures, and remedies for the claim asserted.  Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 9 n. 5 (2003).  Complete preemption converts a state-law claim into a federal claim, allowing the claim to be removed while avoiding the scythe of the well-pleaded complaint rule.  See Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).

### i. Complete Preemption Under Section 301(a) Only

Contrary to UNITE's position, the Supreme Court has clarified that because complete preemption disturbs federalism by replacing state law with federal law, courts should find complete preemption only when the federal statute has "'extraordinary' [preemptive force]."  Id., citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987); see also ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of Mont., 213 F.3d 1108, 1114 (9th Cir. 2000).  While the Supreme Court has found such extraordinary preemptive force with respect to section 301(a) of the LMRA, it has not done so with section 303.  See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 559-60 (1968).

The Supreme Court has explained that section 301(a) completely preempts state-law claims because the statute itself limits to federal fora private remedies for collective bargaining agreement violations.  Id. at 559-60, 561-62; see 29 U.S.C. § 185(a).  The Court has further clarified that Congress, under its

9

commerce clause power, intended section 301(a) to exclusively occupy the field of labor concerning collective bargaining agreements. See Franchise Tax Board of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 23 (1983).

Since Avco, the Supreme Court and the Ninth Circuit have expressly limited complete preemption under the LMRA to disputes arising from collective bargaining agreements under section 301(a). See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7-8 (2003); Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987); Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1183-84 (9th Cir. 2002). No collective bargaining agreements are implicated in the present action, and the Court finds no authority to extend the complete preemption doctrine to secondary boycotts.

### ii. Ordinary Preemption, Not Complete Preemption

UNITE relies on the Supreme Court ruling in Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton, 377 U.S. 252 (1964) to argue that Congress intended the LMRA to occupy the entire field of secondary labor activity. In Morton, the defendant union persuaded three of the plaintiff's customers and suppliers to stop doing business with the plaintiff during a labor dispute. The plaintiff sued in federal district court alleging both section 303 violations and state law violations. Overturning the district court's finding for the employer, the Supreme Court ruled that where federal and state law conflict regarding secondary labor activities, federal law preempts. Morton, 377 U.S. at 259-60, 261.

10

1    Morton is a classic case of ordinary, or conflict,
2 preemption between federal and state law and does little to
3 advance UNITE's argument that complete preemption should apply
4 here.  In fact, conflict preemption merely allows defendants to
5 invoke a defense under federal law that preempts a conflicting
6 state law claim.  Caterpillar, 482 U.S. at 392; ARCO, 213 F.3d at
7 1114.  These two preemption doctrines must be separated, and
8 UNITE does a poor job of it.  Furthermore, Morton was decided
9 four years prior to Avco, wherein the Court introduced the
10 complete preemption doctrine.  As a result, Morton clearly does
11 not stand for the proposition advanced by UNITE.

12    UNITE also contends that the Ninth Circuit recently ruled
13 that section 303 completely preempts state-law economic
14 interference claims in San Antonio Cmty. Hosp. v. S. Cal. Dist.
15 Council of Carpenters.  125 F.3d 1230 (1997).  In San Antonio,
16 the defendant union was embroiled in a labor dispute with a
17 construction company hired to build a hospital wing for the
18 plaintiff.  During a secondary boycott, the union displayed a
19 large banner outside the hospital that read, "THIS MEDICAL
20 FACILITY IS FULL OF RATS."  The hospital filed suit in federal
21 district court, alleging libel, trade libel, and intentional
22 interference with economic advantage under California law, as
23 well as a federal claim for unlawful secondary boycott under
24 section 303.  The district court granted a preliminary injunction
25 in favor of the hospital.

26    On appeal, the Ninth Circuit affirmed, but stated that the
27 "interference with prospective economic advantage and contractual
28 rights claims are preempted by section 303 of the LMRA."  Id. at

11

1235. Based on San Antonio, UNITE contends that Sutter's similar business interference and UCL claims are completely preempted. However, this Court does not agree with UNITE's reading of San Antonio.

The issue before the San Antonio court was whether the remedy sought under plaintiff's state-law business interference claims, which allow for injunctive relief, conflicted with its section 303 claim, which does not provide for injunctive relief. Id. Thus, the court found conflict preemption under section 303, but did not discuss complete preemption. As is the case with the Morton decision, San Antonio deals with conflict preemption rather than complete preemption and is equally inapposite to the case at bar.

### iii. Statutory Construction and Legislative Intent

Section 303 provides that a person's ability to sue in federal court for illegal secondary labor activity is " . . . subject to the limitations and provisions of section [301] . . ." regarding suits by and against labor unions. 29 U.S.C. § 187. UNITE argues that this statutory link between sections 301 and 303 extends the complete-preemptive force behind section 301 to section 303. However, UNITE reads the statute too broadly.

The limitations and provisions in section 301 act to: (a) grant federal district courts original jurisdiction over suits regarding contract violations; (b) make unions liable for the acts of their agents, give unions the right to sue for its employees, and relieve individual union members from liability

for judgments against the union; (c) define personal jurisdiction over unions; (d) describe service of process requirements; and (e) define who is an agent of a union.  A plain reading of these provisions reveals that none of them extend complete preemption to section 303.  Rather, they define many aspects of suits concerning unions without conferring any special grant of jurisdiction.

Unlike section 301, section 303 has scant legislative history.  The little historical guidance that does exist fails to indicate any Congressional intent that sections 8(b)(4) and 303 be the exclusive remedy for persons injured by secondary labor activities.  Accordingly, there is no authority for this Court to extend the reach of the complete preemption doctrine, and we decline to do so.

**b. Claims Raise No Substantial Federal Question**

UNITE contends that the federal government's very strong interest in adjudicating secondary boycott claims implicates a substantial federal question, under the third exception to the well-pleaded complaint rule. However, UNITE's argument is baseless because section 303 grants concurrent jurisdiction to both federal and state courts over secondary boycott claims.  See 29 U.S.C. § 187.  If Congress had a strong interest in adjudicating section 303 claims, it would have limited jurisdiction to federal fora, as it did in section 301(a).  Thus, this exception to the well-pleaded complaint rule does not apply and UNITE fails to establish a basis for removal.

13

**4.   Costs and Attorney Fees.**

Because UNITE's removal was improper as a matter of law, the Court can consider whether to award costs and attorney fees to Sutter.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Congress gave the federal district courts wide discretion to award costs and fees when it amended § 1447(c) in 1988.  Courts need not find bad faith on the part of the removing party, but may award costs whenever it is found that the court lacks subject matter jurisdiction.  However, even if it is found that removal is wrong as a matter of law, awarding fees and costs may be inappropriate where the removal was "fairly supportable."  Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000) (internal citation omitted).

UNITE based its argument for removal on a tortured reading of Supreme Court and Ninth Circuit precedent, citing scores of cases outside of the Ninth Circuit.  However, the Court understands that Supreme Court and Ninth Circuit precedent surrounding sections 303 and 8(b)(4) can be complicated and somewhat contradictory.  Since removal under section 303 is fairly supportable, this Court declines to award Sutter its costs and fees incurred as a result of opposing this removal action.

//
//
//
//

**CONCLUSION**

Based on the foregoing, this Court GRANTS Plaintiffs' motion to remand.  The Court DENIES Plaintiffs' request for an award of costs and attorney fees.

IT IS SO ORDERED.

DATED: August 10, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

15